the case will be taken under advisement and we move to the sixth case this morning, your honors counsel may it please the court. Mr. Ballard appeals following his third sentencing at the district court. In this appeal, he raises similar issues to those that he raised in the previous appeal. Mr. Ballard was sentenced initially in this case as a career offender. The court in that at that point in time did a 10% upward variance from the guideline range and imposed a sentence at that point in time of 232 months incarceration. Mr. Ballard appealed and the government conceded in that instance that he was not a career offender and that in fact his sentence was capped at 10 years. Mr. Ballard was then re-sentenced and at the second sentencing hearing, Mr. Ballard received a sentence of 108 months which was a 160% variant sentence, upward variant sentence from the guideline range. And Mr. Ballard argued in the previous appeal that there was nothing in his case that justified the substantial increase from the 10% upward variance to the 160% upward variance between the first and second cases. In fact at that time there had been more mitigation evidence that was due to Mr. Ballard's good behavior while he was incarcerated and also due to the fact that he had provided information to the state government officials regarding a potential attempt on a guard's life and had done something he'd never done in his life before and that was aided government officials. The case was remanded by this court with directions to the district court and re-sentencing hearing was held. At the re-sentencing hearing last summer, and very significantly as it did in the second case, instead of 160% upward variance, the court imposed approximately 125% upward variance. The court imposed 92 months on the third one. In its previous opinion in this case, this court indicated that perhaps the district court should tie the increase to the guidelines and in this instance the court did point out that it increased the guidelines from 13 to 23, so a 10 level increase in the guidelines. The court based that increase on the same facts that it had before it at the previous sentencing, at the initial sentencing. Again the only difference was additional mitigation information. In this particular instance the additional mitigation information included the fact that Mr. Ballard had for the first time in his life completed a drug treatment program and it was a 180-hour drug treatment program offered by the Illinois Department of Corrections. That's why he was in prison, right? That's why he was in prison, right? Yes, while he was in prison at the state and he also maintained good behavior at that point throughout his stay in state custody including, as I said previously, having reported that there was going to be a planned attack on a guard. So he did very well while he was incarcerated, something that is not clear when you look at his prior history. It's something that's new and also mitigating. In September of 2008... He did spend about 80% of his adult life behind bars, right? He has spent about 80% of his adult life behind bars. As he reported in the change of plea hearing, I'm sorry, the sentencing hearing that took place last June with Judge Gilbert, he said he would be in for six months, get out, go back in for six months, get out, maybe go back in for 18 months. And he had spent his life like that and he was tired. And so at the time that he was sentenced in this case, I think it's important to note that his... I've counted back the previous 10 convictions that Mr. Ballard had before being sentenced here. There were seven driving while licensed and suspended convictions, one drunkenness conviction, one obstruction of justice conviction for providing a false name and date of birth, and one conviction for appeasing a police animal. So that's a far cry from the prior history. And it seems to be the prior history before that, that Judge Gilbert seemed to focus on. And the majority of that is dated out and not counted in the guidelines. And obviously... He didn't let his parole violate or revoke eight times. Your Honor, he did have his parole revoked eight times, but all of that information was... The judge was aware of at the time of the original sentencing when he did the 10% upward variance from the guidelines. Again, the only new information has all been mitigation, which would show a change in Mr. Ballard, which the court gave short shrift to at the sentencing hearing. Mr. Ballard did complete his state sentence. So his federal sentence did not begin until September of 2019. So he's been in custody for quite some time, but he just began serving this sentence in 2019. He began... You failed to mention that he had violent offenses, including attempted kidnapping, aggravated battery, aggravated assault, and domestic battery. So they weren't all graphic offenses. No, Your Honor. I was only looking when I mentioned those other offenses at the last 10 years. And part of the reason for that is the judge seemed to focus strongly on those prior offenses that you just mentioned, which go back to even to the age of 17 and 18 for Mr. Ballard. And those are not counted in the guideline calculation. And so there's a reason for that. The sentencing commission has said, obviously, that the farther we get away from some of those, the older people get, the less likely they are to recidivate. And clearly in the last 10 years, the nature of Mr. Ballard's recidivation was far different because it's traffic offenses, basically, in the last 10 convictions that he had. They were nothing like that. But the court gave short shrift to that. And again, the court was aware of all of the criminal history, all of the violations of parole. Those were all outlined in the pre-sentence report the court had before it when it sentenced him the first time and did a 10% upward variance. The court then, of course, considered that same information and did the 160% variance. This court remanded that. And again, the same information is available, and the court does 125% variance. And the only changes have been to the positive. Mr. Ballard is now doing federal programming because he is in a federal facility. The third sentencing in this federal case, he had only had a very short period of time in the Bureau of Prisons. He'd already completed one program in that three-four-month period, something in that ballpark. And then he was taken back to local custody by the marshals to wait on the sentencing hearing. And he waited some time because of the pandemic. He opted to do the sentencing. And, Your Honor, I see that I have taken up quite a bit of my time. I would like to reserve the remainder if you don't have any further questions for me right now. That's fine, counsel. Thank you. Thank you. Good morning, Your Honors, and may it please the court. George Norwood on behalf of the government. Judge Gilbert followed this court's opinion and explained Judge Gilbert's rationale for the that this court raised in its previous opinion. He addressed those factors. He determined what he believed was a reasonable sentence and it should be affirmed. As you can see, Mr. Ballard has lived a lifetime of crime. My colleague wants you to focus on the last five or 10 years, but you can't do that. He has created a whole lifetime of crime beginning at age 17 and continuing to the present. Where has he been for the last five or 10 years? Pardon? Let's just take the last 10 years. Where has he been? Has he been in prison? He's been in and out of prison for the last 10 years, Your Honor. In and out, he has all these crimes. It seems that they don't keep him very long in prison. He just gets out and does something else. Well, Your Honor, I'm not going to comment on the manner in which the state has handled his previous incarcerations or his previous cases. They have all been state cases. I believe they've all been in the state of Illinois and he receives time. He is paroled. He normally violates that parole, goes back. He then gets out. He commits another crime. And I know they talk about, well, these are just driving offenses recently, but what it shows is an inability to comply with society's basic laws regarding driving. It shows that there is a need to protect the public from future crimes from Mr. Ballard because he refuses to comply with any laws that society has. Well, this time, Judge Gilbert sentenced him to 92 months, right? Yes, Your Honor. And I think the government may have recommended a lot shorter, if I'm not mistaken. Something like... Yes, Your Honor. In this particular hearing, it did. So, I don't call it your recommendation. It was the government's recommendation. Maybe it's some kind of an agreement that he stay in for another 60 months or something. I'm not sure where we stand as far as what the government's concerned. Well, Your Honor, I think the government did make a recommendation in this case. And I guess the point is everybody in the courtroom agrees, and even I think this court agrees, that Mr. Ballard deserves an upward variance. It's just that where along that scale between 41 months and 120 months, that sentence should be. And along that continuum, there is not one reasonable sentence. There is not one month, 60 months, 72 months, 84 months, 92 months. Not one point where there is just one reasonable sentence. There's a continuum of reasonable sentences out there. The government originally said 108 months was a reasonable sentence and recommended that in the first sentencing. And the government... This court said that was too long. So now the government is trying to figure out, well, what is not only an upward variance, but one that this court may accept. Just because Judge Gilbert doesn't rubber stamp the party's agreement and determines his own reasonable sentence does not mean his sentence is unreasonable. There is not just one reasonable sentence in this case. There could be many reasonable sentences. And what Judge Gilbert did was eminently reasonable. So this time we're dealing with 92 months? Yes, Your Honor. Okay, go ahead. I was going to say... We were talking about... Ms. Day raises facts that, well, his older convictions are longer away, as well as the fact that Mr. Ballard is getting older. But I'd point out none of that has prevented him from continuing to commit crimes. Ms. Day also raises the fact that there is... She keeps going back to the original sentence when the defendant was deemed an armed career criminal and his guideline range was 180 to 210 months and said, well, he only went up to 232 months in that case. So the variance was less percentage-wise than currently. Well, that's sort of mixing apples and oranges. When you're trying to determine a reasonable sentence based on the advisory guidelines, if you're starting off at 15 to 17 years and you go up to 19 years, that is still a dramatic increase. And it shows that even with that long of a sentence, Judge Gilbert believed an upward variance was appropriate. Here, we're only talking about... And I know it's not my life, but we're talking about less than eight years, which is a far cry from what Judge Gilbert originally pronounced in this case. Again, the question in this case is, was Judge Gilbert's sentence reasonable? And I think importantly, did Judge Gilbert follow the dictates of this court's prior opinion? And Judge Gilbert clearly did. The sentencing transcript shows that he read basically the entire opinion into the record and then followed that opinion to the T. JUDGE LEBEN Counsel, were most of these offenses... Most or all or how many occurred in the Southern District of Indiana or Illinois? Your Honor, there were... A number of the recent ones were, but he also had convictions in Florida, Pontiac, Illinois, which I believe is up north towards Ural's Way. Pontiac, Illinois, a lot of them occurred up there in the early 90s. He had one occur in Mississippi, the aggravated assault, which was amended down from rate. Uh, and then a number of them were down here. Joliet, Illinois, Will County, he had convictions. They've been all over Louisville, Illinois, which is this way. So they've been all over the state. The more recent ones have been in Southern Illinois because that's where he has lived. That's fine. That's, I just, okay. Um, your, your honors, uh, obviously understand the issue. Um, if you have no questions, I will just, uh, tender back the balance of my time. Thank you, Mr. Norwood. Thank you, your honors. You can take a full two minutes. All right. Thank you very much, your honor. I understand Mr. Norwood's argument that, um, there's not one reasonable sentence on the, uh, you know, sliding list of, of possible, of potential sentences in this case. But we still believe that the sentence that was imposed, um, last summer of 92 months, the 125%, uh, increase above the high end of the guideline is still unreasonable. The court still relies upon the same facts that it relied upon when giving the 10% increase above the guidelines in the original case. And I know that Mr. Norwood's argument seems to be, well, that was a higher starting point to begin with. But that's not how that, you know, the fact that there was an error on the part of the court in calculating the, the guideline range originally, the court still believed that there was a 10%, that 10% was appropriate. The court's, um, sentence in this case does not, uh, consider, again, the, the fact that there's a difference in the nature of Mr. Ballard's prior convictions in the last 10 years. It doesn't consider the mitigating circumstances, the fact that he's completed drug treatment, that he's in a stable relationship. All of those things are ignored by this sentence that is, uh, was, is unreasonably high. And when those factors are considered in, when you consider the, even the fact that the parties themselves, after negotiating from both sides, the pros and cons came up with a sentencing recommendation of 63 months, Your Honor. Your Honors, I think when you consider all of those factors, it is very clear that the sentence in this case was unreasonable. And we are requesting that this court remand this case for further, for resentencing. Thank you, Ms. Day. Thank you, Mr. Norwood. Thanks to both counsel and the cases taken under advisement. And the court will be in recess. Thank you. Thank you. Thank you.